1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHRIS R. LEACH

11          Plaintiff,              No. CIV S-06-1572 GEB DAD P

12   vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14

15          Defendants.            FINDINGS AND RECOMMENDATIONS
     _____/

16          Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42

17   U.S.C. § 1983 and has filed an application to proceed in forma pauperis under 28 U.S.C. § 1915.

18   This proceeding was referred to the undersigned magistrate judge in accordance with Local Rule

19   72-302 and 28 U.S.C. § 636(b)(1).

20          The court is required to screen complaints brought by prisoners seeking relief

21   against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.

22   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

23   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

24   granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

25   U.S.C. § 1915A(b)(1) & (2).

26   /////

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A claim should be dismissed for failure to state a claim upon which relief may be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint.  See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The court must also construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

> The Civil Rights Act under which this action was filed provides as follows:
> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

2

1   omits to perform an act which he is legally required to do that causes the deprivation of which

2   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

3   personnel are generally not liable under § 1983 for the actions of their employees under a theory

4   of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the

5   causal link between him and the claimed constitutional violation must be specifically alleged.

6   See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441

7   (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

8             In the present case, plaintiff identifies as defendants Arnold Schwarzenegger,

9   Governor of the State of California; James Tilton, Secretary of the California Department of

10  Corrections and Rehabilitation ("CDCR"); John Dovey, Director of the CDCR; and Martin Veal,

11  Warden at the California Medical Facility.

12            Plaintiff alleges that defendants have violated his Eighth Amendment right to be

13  free from cruel and unusual punishment.  More specifically, he alleges that defendants have been

14  negligent as well as deliberately indifferent to his medical needs, which stem from a torn anterior

15  cruciate ligament ("ACL") and a torn medial meniscus.

16            On April 18, 2003, plaintiff was playing basketball at High Desert State Prison

17  when the heel of his state-issued boot came off, causing plaintiff to fall and twist his knee.

18  Plaintiff went to the emergency room where Dr. John Doe 1 provided plaintiff with mild pain

19  medication and crutches.  Plaintiff claims he was in extreme pain, could not sleep for three days,

20  and could barely get off the top bunk bed to use the bathroom.  Plaintiff went to see Dr. John Doe

21  1 again and received additional mild pain medication.  Dr. John Doe 1 also ordered an MRI for

22  plaintiff's knee.  Plaintiff alleges that he was still in constant pain after taking the additional

23  medication, but Dr. John Doe 1 refused to help him further until the results of the MRI came

24  back.

25            Plaintiff underwent an MRI in July 2003.  The results demonstrated that plaintiff

26  had a torn ACL and a torn medial meniscus.  Dr. John Doe 1 scheduled an appointment for

3

1    plaintiff to meet with an outside orthopedist, Dr. Polasca.  Plaintiff saw Dr. Polasca in November

2    2003, and had surgery for his torn ACL and torn meniscus on December 23, 2003.  Plaintiff

3    alleges he woke up from surgery vomiting as a result of the anesthesia, but officers immediately

4    brought him back to the outpatient housing unit, claiming the watch commander would be mad if

5    they ran into "overtime."

6          Upon return to the outpatient housing unit, plaintiff alleges that he did not receive

7    any of the pain medication prescribed by Dr. Polasca because officials stated they needed to go

8    into town to have the order filled.  The doctor on duty, instead, provided plaintiff with a different

9    pain medication.  Plaintiff alleges he was in so much pain that he began vomiting again and

10   urinating on himself.  Plaintiff called for help, and nurse John Doe 2 arrived at plaintiff's cell.

11   Plaintiff asked for the pain medication prescribed by Dr. Polasca but was denied pain medication.

12   Plaintiff also requested a sleeping pill but that too was denied.  Plaintiff alleges that this type of

13   disregard to his serious medical condition continued for two weeks.

14         Plaintiff alleges that Dr. Polasca also ordered physical therapy at his clinic where

15   there are machines and weights designed to help individuals like plaintiff get their range of

16   motion back.  However, plaintiff was unable to go to the clinic and instead, completed physical

17   therapy at the institution.  Plaintiff alleges the "therapist" gave him a walker and aerobic ankle

18   weights.  Plaintiff also alleges the "therapist" opined that plaintiff's knee had healed "good

19   enough" even though plaintiff was still in pain.  (Compl. at 8).

20         Plaintiff was later transferred to CSP-Solano, where he tried to obtain help from

21   Dr. Naku and Dr. Roar, but both of them denied plaintiff physical therapy, vitamins, and

22   adequate pain medicine.  Plaintiff alleges that he began having severe complications with his

23   knee, and the pain became so intense that he could not walk.  Officers carried him to the clinic

24   emergency room.  Nurse John Doe 3 provided plaintiff with Demerol to get him through the

25   night, but plaintiff woke up the next morning experiencing the same complications with his knee.

26   Plaintiff alleges he suffered through the same complications for days.  He also alleges that Dr.

4

Naku wrote false information in plaintiff's medical chart, suggesting that plaintiff was "med-seeking" to get high and not to mitigate pain.

On August 27, 2004, plaintiff received a transfer to California Medical Facility. He alleges that his pain continued, but no one there would help him because they assumed he wanted pain medication to get high. On February 25, 2005, Dr. Allcheck ordered 10 days of pain medication for plaintiff and informed him that another doctor had ordered an MRI of plaintiff's knee. After plaintiff experienced several "man-downs" due to knee pain, plaintiff requested and Dr. Allcheck ordered additional pain medication for 25 more days.

Plaintiff alleges that after visiting the Department of Mental Health for a day to get assistance with mental problems, he found out that all of his medication was discontinued. As a result, plaintiff alleges he experienced additional pain, breathing problems, and chest pain.

On April 20, 2005, plaintiff alleges he went "man-down" again for knee complications and pain. He saw Dr. Steever, who informed plaintiff that his blood pressure was dangerously high at 155/102. Dr. Steever then ordered blood pressure medication and additional pain medication for 30 days.

Plaintiff alleges that he went "man-down" on several more occasions, and officers had to bring him to the emergency room on what seemed like a daily basis. On one of the occasions, he saw Nurse D. Tayo-Samoni and explained that he still had not received an MRI for his knee, so Nurse D. Tayo-Samoni re-ordered the MRI.

On November 17, 2005, plaintiff underwent an MRI, and on December 19, 2005, plaintiff learned that his December 23, 2003 surgery "failed," and a "multitude of serious problems" resulted from plaintiff walking on his knee. (Compl. at 10) On December 19, 2005, orthopedist Dr. Kofoed ordered standard x-rays and recommended an arthroscopy under anesthesia. (Compl. at 10). Dr. Kofoed also ordered pain mitigating vitamins, but plaintiff alleges he never received them.

/////

1    Plaintiff requested to see a dietician because he had gained over 50 pounds as a

2    result of being bed-ridden due to pain.  Plaintiff also alleges that he put in a sick slip to see why

3    he had not received the vitamins ordered by Dr. Kofoed.  Plaintiff alleges he never was seen by

4    anyone pursuant to that request but received $5 in charges nonetheless.  On April 10, 2006,

5    plaintiff requested to see Chief Medical Officer Dr. Andrieson.  Plaintiff alleges he received a

6    $5.00 charge for this visit too even though it never took place.

7    Plaintiff seeks injunctive relief, compensatory damages in the amount of

8    $2,000,000 against each defendant jointly and severally, and punitive damages in the amount of

9    $750,000 against each defendant jointly and severally.

10    This court will recommend that this action be dismissed without prejudice to

11    filing a new action after plaintiff exhausts administrative remedies.  Under the Prison Litigation

12    Reform Act of 1995 ("PLRA"),"[n]o action shall be brought with respect to prison conditions

13    under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

14    prison, or other correctional facility until such administrative remedies as are available are

15    exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits

16    about prison life, whether they involve general circumstances or particular episodes, and whether

17    they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

18    A prisoner's concession to nonexhaustion is a valid ground for dismissal of an

19    action.  Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003); McKinney v. Carey, 311 F.3d

20    1198, 1200-01 (9th Cir. 2002) (per curiam).  On plaintiff's complaint form, Question II.C. asks

21    "Is the grievance process completed?"  Plaintiff has checked the "No" box.  In addition, plaintiff

22    alleges in his complaint that on April 27, 2006, he filed a 602 appeal, explaining all of the

23    problems he had experienced as a result of his knee injury.  On June 26, 2006, plaintiff received a

24    response stating, among other things, that they did not have the technology at California Medical

25    Facility or at Queen of the Valley Hospital to complete the arthroscopy Dr. Kofoed ordered.

26    Defendants claimed that they were waiting for an appointment at UCSF.  Plaintiff alleges that he

1    "filed a response to the first level stating that he would be filing a civil suit directly in court based

2    on how long it took the defendents [sic] just to respond at the first level, which was 2 months,

3    and how long plaintiff has been walking on an injured knee, about 3/1/2 years." (Compl. at 12).

4    Finally, in a section titled "Exhaustion of Legal Remedies," plaintiff explains that he filed an

5    appeal and received a partial grant, but in no way did it help plaintiff.  Plaintiff erroneously

6    claims that this should be sufficient for the court.  (Compl. at 13).

7            Plaintiff has cited Lacey v. C.S.P. Solano Medical Staff, 990 F. Supp. 1199 (E.D.

8    Cal. 1997) and Ford v. Page, 169 F. Supp. 2d (N.D. Ill. 2001), believing that he should be

9    allowed to proceed in this action without exhausting administrative remedies as the plaintiffs in

10   those cases did.  In both of those cases, the courts held, among other things, that a plaintiff who

11   was only seeking monetary damages were not required to exhaust the available administrative

12   remedies because those administrative processes available did not provide for money damages.

13   Lacey, 990 F. Supp. at 1205; Ford, 169 F. Supp. 2d at 838.  Plaintiff is advised that Lacey and

14   Ford are no longer persuasive authority because the Supreme Court has held that exhaustion of

15   prison administrative procedures is mandatory regardless of the relief offered through such

16   procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001).  A remedy is available for purposes of

17   § 1997e(a) as long as the administrative process has authority to take some action in response to

18   the prisoner's grievance, even if the action that might be taken is not the remedial action sought

19   by the prisoner.  Id. at 736.  Courts may no longer read futility or other exceptions into the

20   statutory exhaustion  requirement of the PLRA.[1]  Id. at 741 n .6.

21           Plaintiff's response to Question II.C. on his complaint form and his discussions

22   about his 602 appeal demonstrate that the plaintiff has not exhausted his administrative remedies.

23

24           [1]In addition, unlike the plaintiffs in Lacey and Ford, the plaintiff in this action is seeking
     monetary damages and injunctive relief, including orders for future action related to plaintiff's
     medical care, which the administrative appeals process may be able to help provide plaintiff.  For

25   example, plaintiff has received a partial grant on his first level appeal, and officials are
     apparently attempting to secure plaintiff an appointment at UCSF for an arthroscopic procedure.

26   (Plaintiff's Exhibit K.I.(3)(a)-(b)).

1   If a court concludes, as it does here, that a prisoner has not exhausted administrative remedies,

2   "the proper remedy is dismissal of the claim without prejudice." <u>Wyatt</u>, 315 F.3d at 1120.

3   Accordingly, this court will recommend that this action be dismissed without prejudice.

4            If plaintiff decides to file a new action after the grievance process is completed on

5   the claims alleged in his complaint, plaintiff is advised that he must allege in specific terms how

6   each named defendant was involved in the deprivation of plaintiff's rights.  There can be no

7   liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

8   defendant's actions and the claimed deprivation.  <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>May v.</u>

9   <u>Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir.

10   1978).  For example, plaintiff identified four defendants in the caption of his complaint, but

11   plaintiff did not mention any of them elsewhere in his complaint.  Plaintiff must allege with

12   particularity the overt acts each defendant engaged in to support his claims.  As noted above, the

13   court is generally unable to hold supervisory personnel liable under § 1983 for the actions of their

14   employees.

15            Plaintiff is also advised that Eighth Amendment claims related to inadequate

16   medical care must satisfy a certain legal standard.  Specifically, the Supreme Court has required

17   that the plaintiff demonstrate that his medical treatment rose to the level of "deliberate

18   indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  In applying

19   this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights

20   have been abridged, "the indifference to his medical needs must be substantial.  Mere

21   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

22   <u>Broughton v. Cutter Lab.</u>, 622 F.2d 458, 460 (9th Cir.1980), citing <u>Estelle</u>, 429 U.S. at 105-06.

23   In addition, plaintiff must specify which defendants have been deliberately indifferent to his

24   medical needs.  In his complaint, plaintiff included a series of detailed allegations about

25   inadequate medical care for his knee but failed to specify which of the named defendants were

26   indifferent to his needs.  Plaintiff also named a number of doctors, nurses, officers, and other

8

1  individuals involved in his alleged inadequate care but failed to name any of them as defendants.

2  If plaintiff elects to file a new action after exhausting administrative remedies with respect to the

3  claims presented in this complaint, plaintiff must link his legal claims together specific

4  defendants and specific conduct.

5          Finally, plaintiff is advised that if he decides to file a new action, he should not

6  include this case number on the new complaint.  In addition, the new complaint should be

7  accompanied by a new application to proceed in forma pauperis that is up-to-date and properly

8  completed.

9          In accordance with the above, IT IS HEREBY RECOMMENDED that:

10          1.  Plaintiff's July 17, 2006 application to proceed in forma pauperis be denied;

11  and

12          2.  This action be dismissed without prejudice for failure to exhaust available

13  administrative remedies before bringing the action.

14          These findings and recommendations will be submitted to the United States

15  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

16  twenty days after being served with these findings and recommendations, plaintiff may file

17  written objections with the court.  A document containing objections should be titled "Objections

18  to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

19  objections within the specified time may, under certain circumstances, waive the right to appeal

20  the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: March 27, 2007.

22

23

24                                          DALE A. DROZD
                                            UNITED STATES MAGISTRATE JUDGE

25  DAD:9
    leac1572.efr

26

9